ESTATE OF SCHUBERT: SCHUBERT, Administrator, Appellant, v. MILWAUKEE COUNTY, Respondent.

*January 4—February 2, 1960.*

For the appellant there were briefs by *Jeknavorian, Ludwig & Shlimovitz* of Milwaukee, and oral argument by *Garbis C. Jeknavorian* and *R. Arthur Ludwig*.

For the respondent there was a brief by *C. Stanley Perry*, corporation counsel, and *John R. Devitt*, assistant corporation counsel, and oral argument by *Mr. Devitt*.

FAIRCHILD, J.   1. *Claim for general assistance; admissibility of county records.* The instant claim was filed under the authority of sec. 49.08 (1), Stats.  Provisions having the same substance in all material respects were in force at the time the assistance was allegedly granted.  Sec. 49.10, Stats. 1929.  The earlier statute provided in part, "The records kept by the state or municipality for the purpose of showing the names and the value of the relief, support, or maintenance furnished shall be *prima facie* evidence."  The present form of the provision is, "The records kept by the municipality or institution are *prima facie* evidence of the value of the relief furnished."  The records offered by the county in support of its claim for the period from 1930 to 1940 were as follows:

Exhibit 2 consisted of four "relief cards" bearing the name and address of the Schuberts, and an account number, "773."  These cards contain entries from October 1, 1930, to July 31, 1935.  Most of the earlier entries indicate a type of assistance

furnished at intervals of two weeks, *e.g.,* "Prov.," but do not indicate any money value. Entries after May 13, 1933, generally include an amount, as well as a classification, *e.g.,* "Groc. 7.13 (#18)" or "Rent 19."

Exhibit 3 consisted of ten IBM cards labeled with the account number "000773." There was no testimony interpreting the entries on the cards, but there was testimony that each card contained a summation of relief granted for a six-month period. It appears that one card related to 1935, two to 1936, two to 1937, two to 1938, two to 1939, and one to 1940.

Exhibit 4 is a "relief sheet" bearing the Schuberts' name and the account number "773." It contains numerous entries, but in one particular section of the sheet appears a column of entries which appear to be a summary of the assistance for which the claim was filed. This entry reads as follows:

"Aid granted 10/1/30 to 9/1/40

| | |
|---|---:|
| Prov. | 1,478.20 |
| Milk | 567.76 |
| Gas | 125.22 |
| Elect. | 144.84 |
| Fuel | 614.75 |
| Rent | 1,667.50 |
| Shoes | 363.38 |
| Clothes | 379.04 |
| Mattresses | 15.30 |
| Bed | 10.50 |
| Ice | 22.21 |
| Med. | 16.50 |
| Rx | 3.62 |
| Carfare | 1.17 |
| Dental | 41.00 |
| | 5,450.99" |

These exhibits were identified at the hearing by the supervisor of the securities division of the county institutions and departments. She had no direct knowledge of the preparation of these exhibits. She did testify that in order to file the claim, she had obtained these records from the record room of the county department of public welfare, and that they were all associated there by reason of having the same account number. She also testified in explanation of the summary on Exhibit 4 that in 1940 the county was engaged in "accumulating the various charges" from the other records, and that Exhibit 4 was the accounting prepared at that time.

It would appear that the cards designated as Exhibit 2 contained contemporaneous entries of the assistance furnished, but they do not cover the entire period, and do not show the value of all the items furnished. The cards designated Exhibit 3 do not contain contemporaneous entries, and, without interpretation, are unintelligible. Exhibit 4 contains no contemporaneous entries. We think that the testimony may fairly be interpreted, however, as showing that the witness had knowledge of the system by which the county preserved its records of the value of assistance furnished, and identified these particular documents as the records of the Schubert account kept in the course of that system. We conclude that the testimony was barely sufficient to qualify the exhibits as "the records kept by the municipality" under sec. 49.08, Stats.

While Exhibits 2 and 3 each corroborate, to some degree, the authenticity of Exhibit 4, the claim could not be sustained without Exhibit 4, because that is the only record which purports to be a complete statement of the value. The validity of Exhibit 4 obviously depends upon whether the

employee who prepared it carefully and correctly computed the figures from the information on Exhibits 2 and 3, together with other records and information which are no longer available.

Apparently the records containing contemporaneous entries from which the IBM cards in Exhibit 3 were prepared, as well as records of the prices paid by the county for the commodities furnished, are no longer available. We are not aware of any statutory provision authorizing destruction prior to 1947. Since the creation of sec. 59.715, Stats., by ch. 304, Laws of 1947, counties have been authorized to destroy contracts seven years after the last effective day thereof. Ch. 132, Laws of 1955, added the authorization to destroy:

"59.715 (21) Case records and other record material of all public assistance kept pursuant to ch. 49 and sec. 45.20 where no payments have been made for five years or more, provided that a face sheet or similar record of each case and a financial record of all payments for each aid account shall be permanently preserved, and provided further, that records of aid to the blind, aid to dependent children, old-age assistance, and aid to disabled persons, and all case records of relief when a claim for reimbursement from the state is pending under sec. 49.04, shall be destroyed only in accordance with rules adopted by the state department of public welfare."

We conclude that for the purposes of sec. 49.08, Stats., the legislature intended to endow records like Exhibit 4 with a presumption that they were correctly compiled.

The administrator objected to the receipt of Exhibits 2, 3, and 4. He claims that the documents are inadmissible unless they can be qualified by testimony which complies with secs. 327.24 and 327.25, Stats., relating to account books

and entries in the usual course of business. Obviously, the testimony in this matter did not fulfil the requirements of these sections, and if these records are, therefore, inadmissible, the county's claim must fail. We conclude, however, that records of the county need not be shown to be admissible under secs. 327.24 or 327.25 in order to qualify as "records kept by the municipality" under sec. 49.08. If we adopted the administrator's argument, this particular provision of sec. 49.08 would accomplish nothing since records admissible under other sections of the statutes or rules of evidence, would constitute a *prima facie* case without any assistance from sec. 49.08.

2. *Claim for general assistance; laches.* The administrator points to the great lapse of time between the furnishing of the assistance, and the filing of this claim, and to the fact that death had deprived Mr. Schubert of an opportunity to verify or dispute the county's records. There is no proof that any representative of the county attempted collection during Mr. Schubert's lifetime, or called his attention to the value of assistance shown by the records to have been furnished between 1930 and 1940. The administrator asserts that under the circumstances the county's claim is barred by laches.

The county replies that it is its present policy to make some attempt at collection shortly after a relief case is closed, and then, if unsuccessful, ordinarily to wait until after the death of the recipient. It then files a claim against his estate. The county suggests that this policy is more humane and more realistic than to press for repayment while the recipient is alive.

It appears to us that the legislature has intentionally given the county freedom to follow its present policy. Under sec. 49.08, Stats., the county's right to sue does not arise

until the recipient becomes the owner of property; the statute expressly authorizes recovery from an estate as well as by action; when an action is commenced or claim filed, sec. 49.08 provides that the statute of limitations cannot be pleaded in defense; hardship to the immediate family is prevented by authorizing the court to refuse recovery where a parent, wife, or child is dependent upon the property for support.

If the policy followed by the county, and permitted under sec. 49.08, Stats., is not in the public interest, it would require legislation to change it. In view of the fact that approximately twenty years have now elapsed since the end of the depression of the 1930's, and approximately thirty years since it began, a re-examination by the legislature of the propriety of collection at this late date for assistance granted during that period might be in order. But such consideration would not be within the province of the court. The asserted defense of laches is based only upon the very delay which the legislature seems to have authorized.

3. *Claim for hospital care; admissibility of evidence.* The only evidence offered to support the claim for hospital care is Exhibit 5. This document is a form entitled "Request for and statement of account." The upper half is a request to the accounts-receivable department by the securities division for a statement of charges against an individual or family. The lower half of the form contains columns in which, in this instance, charges have been entered for what appear to be five periods of hospitalization, and one item designated "ambulance." Apparently this form went to the accounts-receivable department on March 14, 1958, and was filled in and returned on March 24, 1958. Initials appear at the bottom of the form under the designation, "Milwaukee County Institutions and Departments."

Exhibit 5 was received subject to the objection of the administrator. We do not think that this document qualifies under sec. 49.08 (1), Stats., as "the records kept by the municipality or institution." It was apparently prepared for use in filing the claim. It is a memorandum of what the records, which are themselves apparently still in existence, show. It may well be that the statement accurately reflects the records, and it is true that the administrator's argument here seemed to be directed principally at the admissibility of Exhibits 2, 3, and 4. The arguments he made, however, would have applied to Exhibit 5, and we cannot say that he has waived his objection to it. He was entitled to insist that the county's existing records of the charges be produced in support of its claim. Therefore, we reverse the judgment upon this part of the claim, but deem that under the circumstances, the county should have an opportunity to produce the proper records at a further hearing.

*By the Court.*—Judgment affirmed in so far as it allows $5,450.99 for general assistance furnished. The balance of the judgment is reversed, and cause remanded for further proceedings not inconsistent with the opinion filed herein.